**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| **RAM Construction Services of** | ) | **CASE NO. 11 CV 2507** |
| **Michigan, Inc., d/b/a RAM Construction** | ) | |
| **Services,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **TH Restoration, Inc.,** *et al.***,** | ) | <u>**Memorandum of Opinion and Order**</u> |
| | ) | |
| **Defendants.** | ) | |

This is a contract dispute arising from a Service Agreement entered into by Plaintiff

RAM Construction Services of Michigan Inc., d/b/a/ RAM Construction Services (RAM)

with Defendant TH Restoration, Inc. (TH).  Pending before the Court is "Defendant Steven A.

Tomasone's 12(b)(6) Motion to Dismiss Count V of Plaintiff's Amended Complaint" (Doc.

23) and Defendant Anthony P. Maenza's "Motion to Dismiss Count V of Plaintiff's Amended

Complaint."  (Doc. 30.)  For the reasons stated below, both motions to dismiss are denied.

**Facts**

The following facts are alleged in Plaintiff's Amended Complaint for Money

Damages.  RAM is a Michigan corporation and TH is an Ohio corporation.  Defendants

1

Anthony P. Maenza and Steven A. Tomasone are Ohio residents and officers, directors, and/or shareholders of TH.

TH was a sub-contractor of Clark Construction Group, LLC on a project related to the construction of the Spinal Cord Injury/Disease Center Addition, VAMC, Syracuse, New York, Porject No. 112959 (the "Project").  RAM was a sub-contractor of TH on the Project.

TH and RAM entered into a Service Agreement dated January 15, 2010 (Service Agreement) whereby RAM agreed to furnish supervision, labor, materials, supplies, and equipment in connection with the Project in accordance with approved specifications and drawings.  Specifically, RAM agreed to provide joint ceiling fire-stopping and other related services to TH in connection with the Project.  In exchange for RAM's work and materials, TH agreed to pay RAM the sum of $539,000.

RAM fully complied with all of its contractual obligations under the Service Agreement.  However, despite the fact that Clark paid TH for the supervision, labor, materials, supplies, and equipment that RAM provided on the Project, TH failed and refused to pay RAM all amounts due and owing under the Service Agreement as RAM demanded.  RAM alleges that it is currently owed $160,594.89, plus interest, under the terms of the Service Agreement.

RAM alleges that the payment TH received from Clark rightfully belongs to RAM and that by failing to forward to RAM the payment it received from Clark, TH wrongfully converted the payment to its own use or the use of its principals.  (*Id*., ¶ 31.)  In addition, RAM alleges that TH "had no intention of fulfilling its promise to pay RAM $539,000" as TH agreed in the Service Agreement but, rather, "intended all along to withhold a portion of the

$539,000 it had promised to pay RAM" and to divert such funds for other purposes.  (Am.

Complt., ¶¶ 38-39.)  Ram alleges that TH "specifically represented" to RAM in a joint check

agreement that all funds TH received from Clark related to the Project would be used solely

to pay for material and labor provided for the Project by RAM, but that TH did not intend to

use funds received from Clark in this manner.  Rather, RAM alleges, upon information and

belief, that TH intended to "divert funds it received from Clark for other purposes," including

to divert funds "for Maenza's and Tomasone's personal use."  (*Id.*, ¶¶41-42.)

RAM's Amended Complaint sets forth five claims for relief.  Four claims for relief are

alleged against TH:  breach of contract (count one); unjust enrichment (count two);

conversion (count three); and fraud in the inducement (count four).[1]  Count five alleges a

claim to "pierce the corporate veil" against Defendants Maenza and Tomasone to hold them

personally liable for the debt of TH.  In support of count five, RAM alleges that Tomasone

and Maenza "exercised complete dominion and control" over TH such that TH "had no

separate mind, will, or existence of its own," was grossly undercapitalized, and that

Tomasone held himself out as being personally liable for certain corporate liabilities related

to the Project, including pledging his own assets and signing a personal guarantee in order for

TH to obtain the minimum amount of insurance required by Clark.  In addition, RAM alleges

---

[1]

The alleged basis for count four is RAM's allegations that "TH, through Maenza, fraudulently induced RAM Construction to enter into the Service Agreement by falsely representing to RAM Construction during negotiation that it would pay RAM Construction $539,000" and that all funds received from Clark related to the Project would be used solely to pay for materials and labor provided by RAM when, in fact, TH "had no intention of fulfilling its promise to" pay RAM but "intended all along to withhold a portion of the $539,000 it had promised to pay RAM" and to divert funds it received from Clark to pay other invoices or to divert them for Maenza's and Tomasone's personal use.  (Am. Complt., ¶¶ 35, 38, 39, 41, 42.)

3

that TH was insolvent at the time it incurred the debt to RAM and that Maenza and Tomasone diverted TH's funds (specifically, the funds that Clark paid TH for the work performed on the Project by RAM) for their own personal purposes.  RAM alleges that Maenza and Tomasone exercised their complete control over TH "in such a manner as to commit fraud against RAM . . . by failing and refusing to pay RAM in accordance with the terms of the Service Agreement" despite the fact that TH received such payment from Clark.  (Am. Complt., ¶¶ 51-55.)

Tomasone's and Maenza's motions to dismiss are directed only as to count five of the Amended Complaint.

### Standard of Review

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a complaint.  In order to survive a motion to dismiss, a complaint's factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.  *Ass'n of Cleveland Firefighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere

4

conclusory statements, do not suffice." *Id.*

**Discussion**

Tomasone contends count five of the Amended Complaint should be dismissed against him pursuant to Fed. R. Civ. P. 12(b)(6) because RAM's Amended Complaint fails to plead facts sufficient to pierce the corporate veil of TH.[2]

In Ohio, "[a] fundamental rule of corporate law is that, normally, shareholders, officers, and directors are not liable for the debts of the corporation." *Belvedere Condo. Unit Owners' Ass'n v. R.E. Roark Cos., Inc*., 617 N.E.2d 1075, 1085 (Ohio 1993).  An exception to this general rule has developed in equity to protect creditors of a corporation from shareholders who use the corporate entity for criminal or fraudulent purposes.  *Id.*  In Ohio, the corporate veil of a corporation may be pierced and individual shareholders held personally liable when the plaintiff  shows the following three elements:

> (1) the individual shareholders, or any other legal entity, exercised such complete  control that the corporation has no separate mind, will, or existence of its own; (2) that this control was used to commit fraud, an illegal act, or a similarly unlawful act; and (3) that the control and wrong resulted in injury or unjust loss to the plaintiff.

*Ruffing v. Masterbuilt Tool & Die, LLC*, No. 1:08 CV 1264, 2009 WL 185950, at * 14 (N.D. Oh. Jan. 23, 2009).  A plaintiff who seeks to pierce the corporate veil by alleging fraud must meet the heightened pleading requirements imposed by Fed. R. Civ. P. 9(b).  *Southeast Tex. Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 672 (6th Cir. 2006).  Rule 9(b) states that "a party must state with particularity the circumstances constituting fraud."  Under this

---

[2]

Only Tomasone's arguments are addressed because Maenza adopted and incorporated Tomasone's reasons for dismissal as the basis for his own motion to dismiss.  (*See* Doc. 30.)

standard, a plaintiff who brings a fraud claim must generally "allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Sanderson v. HCA The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006).

Tomasone contends RAM's allegations are insufficient to meet this test. Tomasone's primary argument is that the Amended Complaint is insufficient to pierce the corporate veil because RAM fails to plead fraud against him with particularity. Tomasone asserts that RAM has failed to allege "even the hint of any specific facts, let alone the time, place and/or content of an alleged fraud by Tomasone." (Rep. at 2.) In addition, Tomasone contends the Amended Complaint is insufficient because Ram "has provided no facts to establish that Tomasone had or has such control over TH as to be indistinguishable from TH" other than "conclusory, speculative, and generalized statements" by RAM. (Mem. at 10.)

RAM contends it has alleged sufficient facts to survive a dismissal. It contends the Amended Complaint contains sufficient allegations as to both the control and fraud elements required to pierce the corporate veil of TH. With respect to control, RAM points to the general allegations in its Amended Complaint that Tomasone and Maenza exercised complete dominion and control over TH, as well as to specific allegations indicating that TH was undercapitalized and was insolvent at the time TH incurred the debt to RAM. (*See* Opp. at 6.) With respect to fraud, RAM points to its allegations that Maenza and Tomasone intended to and used their control over TH to divert "TH's funds for their own personal purposes, including funds that RAM Construction had been promised would be used solely to pay RAM Construction." (Opp. at 13.)

6

The Court finds that RAM's allegations are sufficient to survive a motion to dismiss.

In determining whether the first, "control," element of the test for piercing the corporate veil of a corporation is satisfied, Ohio consider such factors as:

> (1) grossly inadequate capitalization; (2) failure to observe corporate formalities; (3) insolvency of the debtor corporation at the time the debt is incurred; (4) shareholders holding themselves out as personally liable for certain corporate debts; (5) diversion of funds or other property of the company for personal use; (6) absence of corporate records; (7) the fact that the corporation was a mere facade for the operations of the dominant shareholder.

*Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 605 (6th Cir. 2005).  RAM's Amended Complaint sets forth allegations suggesting that several of these factors exist.  In particular, the Amended Complaint contains allegations indicating that TH was inadequately capitalized, was insolvent at the time of its debt to RAM, that shareholders held themselves out as being personally responsible for certain corporate debts, and that there was a diversion of corporate funds for the personal use of shareholders.  Furthermore, Ohio courts have indicated that the degree of control exercised over a corporation for purposes of determining whether to pierce the corporate veil is a fact-sensitive inquiry, which should not be answered until the plaintiffs have had some opportunity to conduct discovery "[d]ue to the importance of discovery in establishing the element of control."  *Orrand v. Kin Contractors*, No. 2: 09 CV 1129, 2011 WL 1238301, at * 4 (S.D. Ohio Mar. 30, 2011).  Therefore, the Court find that RAM's Amended Complaint adequately pleads the element of control for purposes of Rule 12(b)(6).

The Court also finds that the Amended Complaint adequately pleads the second element of the test for piercing the corporate veil, that TH's shareholders exercised their control over the corporation in such a manner as to commit fraud or an illegal act.  As the

Sixth Circuit acknowledged in *Taylor Steel*, Ohio courts of appeals have consistently interpreted the second prong of the test for piercing the corporate veil to be satisfied where defendants used control of a corporation to commit "a harmful, unjust, unfair, inequitable or wrongful act rather than solely a criminal one." *Taylor Steel*, 417 F.3d at 605.  Courts have found the second prong satisfied for purposes of a motion to dismiss where defendants are alleged to have used a corporation irregularly for fraudulent purposes.  *See, e.g., Fortress Valley Recovery Fund v. Columbus Components Group*, Case No. 11-CV-200, 2011 WL 1130442, at *6 (N.D. Ohio Mar. 28, 2011) ("The Plaintiff says that James used the corporations to transfer funds from Columbia Components, leaving that corporation unable to meet its liabilities, and that Columbus Components purposely misrepresented its financial condition and whether the relevant loan was adequately secured.  These allegations, if proven true, would support a claim of fraud and would satisfy the second prong of the test for piercing the corporate veil.").  *See also Ruffing*, 2009 WL 185950, at * 15 (finding the following allegations "more than enough particularity to satisfy the heightened pleading requirements for a claim of fraud" and to pierce the corporate veil of Masterbuilt:  "that despite having a contract that was ostensibly with Masterbuilt, Ruffing was always paid by Red Rock, that Masterbuilt (the company with whom [Ruffing] signed a contract) was not "real," and that various aspects of the contract appear to be fraudulent to the extent that Masterbuilt was a company with no assets, liabilities, products, or employees (other than Ruffing)").

RAM likewise alleges in its Amended Complaint here that TH's shareholders used TH fraudulently, *i.e.*, for the purpose of diverting for shareholders' personal use corporate money

8

TH owed to and represented would be used to pay a sub-contractor.  Accordingly, the Court finds RAM's allegations sufficient to meet the second prong of the test for piercing the corporate veil at this pleadings stage.

**Conclusion**

For the reasons stated above, the Amended Complaint sets forth sufficient facts to make it plausible that RAM could prove a basis to pierce the corporate veil of TH to hold Tomasone and Maenza personally liable for TH's debt under Ohio law.  Tomasone's and Maenza's motions to dismiss count five are, accordingly, both denied.

IT IS SO ORDERED.

 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 5/21/12

9